**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | **FILED**<br><br>JAMES J. WALDRON, CLERK<br><br>December 20, 2012<br><br>U.S. BANKRUPTCY COURT<br><br>NEWARK, N.J.<br><br>BY: /s/ Nelson Dos Santos, Deputy |

**In Re:**

**U.S. Eagle Corporation, et al.,**

       **Debtors.**

---

**U.S. Eagle Corporation,**

       **Plaintiff,**

**vs.**

**Scott K. Westphal,**

       **Defendant.**

---

**Scott K. Westphal,**

       **Third-Party Plaintiff,**

**vs.**

**Dawn Westphal Thompson, Philip Thompson and**
**James J. Westphal, Jr.,**

       **Third-Party Defendants.**

**Case No.:**    **11-10392 (NLW)**

**(Jointly Administered)**

**Adversary Pro. No.:**   **11-2399**

**Chapter 11**

<u>**OPINION**</u>

**BEFORE:**    **Hon. Judge Novalyn L. Winfield**

<u>**A P P E A R A N C E S :**</u>

Jeffrey J. Wild, Esq.
Bernard J. Cooney, Esq.
Lowenstein Sandler, PC
Roseland, NJ 07068
Attorneys for Plaintiff U.S. Eagle Corporation

Douglas J. Mcgill, Esq.
Webber McGill LLC
760 Route 10, Suite 203
Whippany, NJ 07981
Attorneys for Scott K. Westphal

John A. Fialcowitz, Esq.
89 Headquarters Plaza North, Suite 1216
Morristown, NJ 07960
Attorney for Third-Party Defendants
Dawn Westphal Thompson, Philip Thompson,
James J. Westphal, Jr.

In the instant adversary proceeding two motions have been presented to the court: (i) Plaintiff's motion to dismiss Defendant's counterclaim, and (ii) Third Party Defendants' motion to dismiss the third party complaint. As set forth below both motions are granted.


## JURISDICTION

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on September 18, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). To the extent that this matter is determined by the district court to constitute a non-core proceeding, it is requested that the district court treat this opinion as proposed finding of fact and conclusion of law.


## STATEMENT OF FACTS

### I.    The Parties

U.S. Eagle Corporation ("Plaintiff" or "U.S. Eagle") is a closely held Delaware corporation with its headquarters in Elizabeth, New Jersey. (*See* Certification of Bernard J. Cooney, Esq., Feb. 17, 2012 ("Cooney Cert."), Compl., dated May 25, 2011 attached to Cooney Cert. as Ex. A ("Complaint") ¶ 2) It is owned by various members of the Westphal family. The percentage of stock ownership is as follows: defendant Scott Westphal ("Scott") owns 19.72% of the Debtor's stock; Scott's sister and third-party defendant Dawn Westphal Thompson ("Dawn") owns 21.4%; Scott's brother and third-party defendant James J. Westphal ("Jim") owns 35.66%; James J. Westphal, III owns 8%; Erik C. Westphal owns 8%; and Douglas Westphal owns 7.2%. (*See* Complaint ¶ 7) Scott indicates, however, that he holds 19.72% of the stock, but that he controls 35.7% of the stock. (*See* Amended Counterclaim, dated Jan. 24, 2012, ("Am.

Countercl.") ¶ 6) However, either percentage ownership stake constitutes a minority shareholder interest.

The Debtor has operated and largely continues to operate through its wholly owned subsidiaries: Julius Realty Corporation ("Julius"), Eagle One Gold Products, Inc. ("Eagle One"), and Traffic Control Services, Inc. ("TCS"). (*See* Compl. ¶ 8) All three subsidiaries maintain a principal place of business in California. (*Id.*) Dawn is the president of Julius, her husband Philip Thompson ("Philip") is the president of Eagle One, and Jim is the former president of TCS. (*Id.* ¶ 9) Dawn, Philip, and Jim are also each members of the Debtor's board of directors ("Board"). (*Id.*)

U.S. Eagle, Eagle One, Julius, and TCS filed petitions for relief under Chapter 11 of the Bankruptcy Code ("Code") on January 6, 2011 ("Petition Date"). As debtors-in-possession, U.S. Eagle and its subsidiaries operated their businesses and managed their properties under §§ 1107(a) and 1108 of the Code. The Joint Plan of Reorganization was confirmed by order dated September 12, 1012.[1]

## II.    Procedural History

The instant adversary has a somewhat lengthy pre-bankruptcy history, and is the second suit commenced by U.S. Eagle against Scott. Initially, in October 2010 U.S. Eagle filed a complaint against Scott in the United States District Court for the Southern District of Florida ("Florida District Court"). (Cooney Cert. Ex. B) That complaint sought (i) a declaratory judgment that Scott's termination as an employee, officer and director was valid and enforceable; (ii) replevin of company property, including a company car; and (iii) judgment under the Lanham Act based on Scott's alleged unauthorized use in interstate commerce of the company

---

[1] However, TCS is no longer an operating entity and is being liquidated.

email.  This complaint was amended to eliminate the Lanham Act count, and Scott subsequently moved to dismiss the amended complaint for failure to meet the amount in controversy threshold.  (Cooney Cert. Ex. C)  Before the matter could be heard, U.S. Eagle voluntarily dismissed the complaint pursuant to Fed. R. Civ. P. 41(a)(1). (Cooney Cert. Ex. D)  The Florida District Court entered an order dismissing the case without prejudice on May 27, 2011.  (Cooney Cert. Ex. E)

At the same time that it was seeking dismissal in the Florida District Court, U.S. Eagle filed a complaint in the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida ("State Complaint"). (Cooney Cert. Ex. E)  The State Complaint contained a count for declaratory judgment and a count for replevin, in language substantially similar to the complaint filed in the Florida District Court.[2]

Despite his earlier reluctance to litigation in the federal court system, on June 23, 2011 Scott filed a Notice of Removal under 28 U.S.C. §§1334 and 1452 to bring the State Complaint to the Florida District Court.  (Cooney Cert. Ex. F) asserting that original jurisdiction exists in the district court because of the pending U.S. Eagle bankruptcy.  On that same day Scott filed a motion under 28 U.S.C. § 1404(a) to change the venue from the Florida District Court to the District of New Jersey.  (Cooney Cert. Ex. G)  U.S. Eagle and Scott stipulated to the change of venue and transfer of the case to the bankruptcy court, and the Florida District Court transferred the matter by order dated July 29, 2011 (Cooney Cert. Ex. H, I)  The United States District Court for the District of New Jersey referred the matter to this court by order dated August 15, 2011. (Cooney Cert. Ex. J)

---

[2]After the U.S. Eagle complaint was removed to this court the replevin action was effectively mooted by Scott's return of the Company Car.

### III. Circumstances giving rise to current litigation

Once the adversary proceeding was opened in the bankruptcy court, Scott filed his answer together with a counterclaim and a third party complaint against Dawn, Philip and Jim (collectively, "Third Party Defendants"). Scott's counterclaim demanded judgment against U.S. Eagle for improper termination through minority shareholder oppression, and both consequential and punitive damages. A few weeks later, Scott filed an amended answer ("Amended Answer"), counterclaim ("Amended Counterclaim") and third party complaint ("Amended Third Party Complaint"). It is the Amended Counterclaim and Amended Third Party Complaint that are the subject of the motions to dismiss. The Amended Counterclaim relies on N.J.S.A. 14A:12-7 and Scott further seeks reinstatement as an officer and director of U.S. Eagle. The Amended Third Party Complaint against Dawn, Philip and Jim likewise alleges a claim for minority shareholder oppression under the New Jersey statute, and alleges a breach of fiduciary duty by Dawn, Jim and Philip. Consequential and punitive damages are requested under all counts of the third party complaint.

Of course, the parties have different recollections of the important facts that underly the present dispute. Scott emphasizes the length of his tenure with U.S. Eagle, noting that he began with the company as a salesman 1973, and became a director in 1975, and an officer in 1980. (Am. Countercl. ¶¶ 8–10) He claims to have started a subsidiary business for U.S. Eagle that he subsequently sold, yielding "a significant return to U.S. Eagle and its shareholders." (*Id.* ¶ 11, 14)

Scott further avers that after this transaction, in or about 1996, he established Can Components Corp. ("CanCo") as a wholly owned subsidiary of U.S. Eagle. (*Id.* ¶ 15) Scott acknowledges that CanCo did not achieve profitability within the time frame projected, and that on or about 1999, the Board of Directors ("Board") determined to cut-off CanCo's funding. (*Id.*

¶¶ 17, 19)  He further states that the Board made this decision after he recused himself from the Board, and that U.S. Eagle transferred its interest in Canco to Scott in exchange for his assumption of the CanCo Liabilities.  (*Id.* ¶ 20)  Scott also received an unspecified amount of cash in connection with this transaction.  (*Id.*)  Lastly, Scott states that in connection with these events he resigned as an officer of U.S. Eagle but continued as a director.  (*Id.* ¶ 23)

U.S. Eagle recounts no background facts to the termination of Scott's employment in 1999, stating simply that U.S. Eagle and Scott entered into a Severance Agreement and Release, effective January 1, 1999 that terminated his employment.  (Compl. ¶ 11)  Although, the time period is not specific, U.S. Eagle also states that "for a period of time following [Scott's] termination, he was not re-elected as a director." (*Id.*)

Scott avers that he was not re-elected because on or about 2000 Jim "and his subservient directors" engineered his ouster as director.  (Am. Countercl. ¶ 32)  The Amended Counterclaim suggests that this occurred because Scott conveyed to the Board allegations regarding improper conduct by Jim, "involving among other things, alleged self-dealing, corporate waste and other breaches of the duty of loyalty, and other acts of malfeasance."  (*Id.* ¶ 25, 26) Scott asserts that these allegations were conveyed to him by Dawn.  (*Id.* ¶ 24)  The Board referred the matter to Corporate counsel who hired an auditor to investigate the claims.  (*Id.* ¶ 27)  The auditor recommended that the Board should revamp certain policies.  (*Id.* ¶ 28)  The Amended Complaint does not address, and the Amended Counterclaim does not identify, the time period in which the auditor's investigation took place, or the recommendations made by the auditor.

Notwithstanding the prior termination of his employment and his role as a director, in or about 2005 Scott rejoined U.S. Eagle as Secretary and Vice President.  (Compl. ¶ 11)  U.S. Eagle states that Scott's re-hiring was as an at-will employee, with no employment contract and was undertaken by U.S. Eagle despite "past conflicts and performance issues" with Scott. (*Id.*)  Scott

claims that his employment occurred because at a June 2005 shareholders meeting he and Dawn

reconfigured the U.S. Eagle Board so that it consisted of Dawn, Scott, Jim, Philip "and its then

current Chairperson Guy Gilleland (who resigned shortly thereafter), with the result that Scott

was elected Chairman of the Board and highest ranking officer of U.S. Eagle and Vice President

and Secretary of each subsidiary."  (Am. Third Party Compl. ¶ 39)  Scott further claims that

under his leadership, in 2005 and 2006 U.S. Eagle enjoyed the two most profitable years in its

history.  (*Id.* ¶ 40)  In its Amended Complaint, U.S. Eagle acknowledges that in 2005 the Board

was reconstituted as described by Scott,   (Compl. ¶ 12) but does not describe Scott's

performance in 2005‒2006.  Rather, U.S. Eagle focuses on subsequent years, stating that

> [a]lthough Defendant was designated to be responsible for the
> oversight and management of U.S. Eagle's administration and
> finances, in recent years, he infrequently traveled to U.S. Eagle's
> corporate office in Elizabeth, New Jersey from his residence in
> Florida.  During the course of his employment, Defendant admitted
> that his knowledge of finance was limited and, consequently, most
> or all of the companies' financial matters were handled by U.S.
> Eagle's CFO, the CFO's staff and/or the outside accountants. . .
> In or about January 2010, U.S. Eagle retained an outside
> consultant, BDO Consulting Corporation Advisors, LLC ("BDO"),
> to assist in evaluation of its businesses and operations.  Among
> other things, BDO questioned the role that Defendant actually
> served in U.S. Eagle's businesses, and questioned the value that
> Defendant was providing to the companies.  Specifically, BDO
> wrote, in relevant part, that: "The Vice President of U.S. Eagle
> does not provide key executives and managers with critical
> financial information in a usable format and a timely manner to
> assist them in making critical operating and marketing decisions."

(Compl., ¶¶ 13, 15)

Scott sees the years leading up to 2010 somewhat differently.  He contends that once in

charge he embarked on a program of addressing inefficiencies at the subsidiaries, instituting cost

management policies and other practices designed to improve profitability.  (Am. Third Party

Compl. ¶ 41)  Further, he claims that as the subsidiaries of U.S. Eagle were subject to greater

control, Jim, Philip and Dawn began to resist Scott's efforts to eliminate corporate waste and perks.  (*Id*. ¶ 48)  Scott concludes that because of his policies, without notice to him, a Board meeting was convened in September 2006 at which Dawn and Jim caused the issuance of a corporate resolution banning Scott from involvement with the day to day operations of the U.S. Eagle subsidiaries. (*Id.* ¶ 50)

Ultimately, on August 16, 2010, Dawn and Jim, as the majority shareholders, executed a written consent removing all directors, including Scott, from the Board, appointing Dawn, Philip and a new director, Todd Bearup ("Bearup") as the new Board.  (Compl. ¶ 16)  U.S. Eagle asserts that these actions were taken in accordance with Delaware law and as shareholders of a Delaware corporation.  (*Id*.)  Thereafter the new board voted to terminate Scott's employment and subsequently sent him a termination letter dated August 23, 2012.  (*Id*., ¶ 17, 18)  U.S. Eagle claims that Scott's termination resulted from the report prepared by BDO.

Scott claims that his removal was orchestrated by Dawn, Philip and Jim, and that it was undertaken without any opportunity to be heard, or to discuss terms of severance.  (Am. Third Party Compl. ¶¶ 56, 57)  Scott states that prior to his removal as an officer and director he made repeated requests to Dawn and others "for financial reports and other books and records of U.S. Eagle and its subsidiaries and to meet with the company's lender, Comerica Bank, which requests were denied."  (*Id*. ¶ 58)  Scott believes that he was terminated in retaliation for "his efforts to curtail corporate waste and personal perks at the subsidiary level and that he termination was without justification and motivated by malice.  (Am. Countercl. ¶ 60)  Furthermore, Scott claims that his termination "unjustifiably thwarted the understanding on which [he] became and has remained a shareholder. . . ." (Am. Countercl. ¶ 62)

During the course of Scott's employment with the Debtor, the Debtor issued a motor vehicle to Scott.  According to the Certificate of Title, the Debtor is the owner of a 2007 Audi

A8L, ("Company Car").  (*Id.* Ex. B)  The Company Car was provided to Scott by U.S. Eagle for his use as Vice President.  Scott admits that he had use of the automobile.  (Am. Answer ¶ 14)  The Debtor alleges in the Complaint that the value of the Company Car was approximately $77,000 and that Scott did not return the motor vehicle and other property as directed by the Termination Letter.  (*Id.* ¶ 19)  Instead, on October 11, 2010, Scott through his attorney sent a letter to the Debtor indicating that his termination amounted to minority shareholder oppression and demanding that he be immediately reinstated as the Debtor's Vice President and member of the Board. (*Id.*)  The Debtor did not reinstate Scott.  However, as noted above the motor vehicle was subsequently returned.

## IV.    Positions of the Parties

U.S. Eagle seeks dismissal of Scott's Counterclaim on the ground that U.S. Eagle is incorporated in the State of Delaware, and Delaware law neither recognizes Scott's claim for minority shareholder oppression nor confers a cause of action on an at will employee, who is subject to termination at any time without cause.  U.S. Eagle posits that Delaware law applies rather than the New Jersey statute on which Scott grounds his counterclaim, because this court must first look to the law of the court that granted the transfer of venue.  It urges that because the dispute is between the corporation and one of its shareholders, under Florida choice-of-law rules the Florida District Court would apply the "internal affairs" doctrine which holds that the internal affairs of a corporation are governed by the law of the state of incorporation.  As a result, U.S. Eagle states Delaware not New Jersey, supplies the law to be applied to the matter at hand and dismissal of Scott's Counterclaim[3] must occur.

---

[3] This court will refer to the Amended Counterclaim and Amended Third Party Complaint as simply "Counterclaim" and "Third Party Complaint" for the remainder of the opinion.

The Third Party Defendants concur with U.S. Eagle regarding the applicability of Delaware law to that matter at hand and further argue that Delaware also does not recognize a cause of action for breach of fiduciary duty against directors and officers where the claim is essentially an employment dispute.  They further contend that to the extent Scott's breach of fiduciary duty claims against them are grounded in events other than his termination as an employee, the claims are barred by Delaware's three year statute of limitations governing breach of fiduciary duty claims.

Scott, as a primary attack on the position of U.S. Eagle and the Third Party Defendants, rejects the argument that Delaware rather than New Jersey law applies to the counterclaim and third party complaint.  He claims that they ignore the procedural posture of the case.  He points out that neither the Counterclaim not the Third Party Complaint were transferred by the Florida District Court, and argues that New Jersey law applies to the Third Party Complaint because it was filed in the bankruptcy court for the District of New Jersey.  Scott further claims that the Counterclaim is governed by New Jersey law because (i) the Counterclaim is permissive rather than compulsory and (ii) permissive counterclaims filed after transfer under § 1404(a) are governed by the choice-of-law rules of the transferee forum.

Scott's application of New Jersey choice-of-law rules to the Counterclaim and Third Party Complaint results in both claims retaining viability because he concludes that New Jersey law applies.  Scott claims that the state of incorporation is not a dispositive criteria and this court may apply New Jersey's "governmental interest" standard which requires application of the law of the state with the greatest interest in resolving the litigation issues.  As New Jersey is the state in which the Chapter 11 petition was filed and in which U.S. Eagle has its principal place of business,  Scott concludes that New Jersey has the greater interest.  Alternatively, Scott claims that because Delaware actually recognizes a claim for minority shareholder oppression, and thus

there is no conflict in the law of the two jurisdictions. Additionally, with regard to his counts in the Third Party Complaint alleging breach of fiduciary duty, Scott asserts that these claims are viable under New Jersey law because the New Jersey statute of limitations provides for a six year limitations period.

## CONCLUSIONS OF LAW

### I.    Standard for Dismissal

Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), allows dismissal of the complaint if the defendant shows that the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))(internal quotations omitted); *see* Fed. R. Civ. P. 8(a)(2). The court must take the facts alleged in the complaint as true, must draw reasonable inferences in favor of the plaintiff, and may not dismiss the complaint "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)(explaining that *Twombly* reaffirmed this long-standing standard for a motion to dismiss under Federal Rule 12(b)(6)).

In order to survive a Rule 12(b)(6) motion, the complaint must allege more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. That is, it is not enough for the complaint to suggest a cause of

action. Rather, the complaint must contain "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570. The Third Circuit requires trial courts to

conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.

The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any

legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). Second,

the court "must then determine whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a plausible claim for relief." *Id.* at 211. "[A] complaint must do more than

allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its

facts." *Id.*


## II.      Choice of Law

Both Scott's motion to change venue and the Stipulation for Change of Venue

("Stipulation") under which U.S. Eagle agreed to the change of venue rely on 28 U.S.C. §

1404(a) as the basis for the venue change. Additionally, in the Stipulation both Scott and U.S.

Eagle agreed that Scott's removal of the State Court complaint to the Florida District Court was

permitted under 28 U.S.C. § 1332, which provides for jurisdiction in the district court if the

matter in controversy exceeds $75,000, and there is diversity of citizenship. Given these facts,

U.S. Eagle and the Third Party Defendants insist that under *Van Dusen v. Barrack*, 376 U.S. 612,

639 (1964), this court as the transferee court faced with a choice-of-law question must apply the

choice of law rules followed by the Florida District Court, the transferor court. In *Van Dusen*,

the Supreme Court concluded that "where the defendants seek transfer, the transferee district

court must be obligated to apply the state law that would have been applied if there had been no

change of venue. A change of venue under § 1404(a) generally should be, with respect to state

12

law, but a change of courtrooms." *Id*. This holding is reinforced by *Van Dusen's* earlier observation that "the legislative history of § 1404(a) certainly does not justify the rather startling conclusion that one might 'get a change of law as a bonus for a change of venue.'" *Id*. at 635–36; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)(holding that the law of the transferor court applies regardless of who initiated the transfer).

### a.    Application of Rule 13

The motions to dismiss raise intertwined issues of both procedural and substantive law. Scott's claim that the substantive law of New Jersey rather than Delaware applies to his Counterclaim and Third Party Complaint rests (i) on his contention that his counterclaim is permissive rather than compulsory and (ii) on his conclusion that the court should apply the "governmental interest" test rather than the "internal affairs" doctrine to make its choice of law determination.  The court does not find either argument persuasive.

Under Rule 13 a counterclaim is compulsory if (i) the claim exists when the answer is filed; (ii) it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"; and (iii) the counterclaim "does not require adding another party over whom the court cannot exercise jurisdiction."  Fed. R. Civ. P. 13(a)(1)(A–B).  As defined in Rule 13, a permissive counterclaim is any claim that is not compulsory.  Fed. R. Civ. P. 13(b).   If new parties are to be added, Rule 13(h) further provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  Fed. R. Civ. P. 13(h).  Rule 19 treats required joinder of parties if feasible and Rule 20 addresses permissive joinder of parties.  Fed. R. Civ. P. 19; Fed. R. Civ. P. 20.

Scott's Counterclaim consists of a single count alleging minority shareholder oppression, and seeking redress under N.J.S.A. 14A:12-7, as well as any other applicable law.  This

Counterclaim responds to U.S. Eagle's Complaint for declaratory judgment that Scott's termination was proper.

Scott's Counterclaim easily qualifies as a compulsory counterclaim, as Scott's counterclaim bears a 'logical relationship' to U.S. Eagle's claim for relief, and is grounded in the same facts that form the basis for the U.S. Eagle Complaint: Scott's employment as an officer and service as a director at U.S. Eagle in the time period preceding his termination.  In this Circuit it has long been held that "the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (1978)  As stated in *Great Lakes Rubber Corp. v. Herbert Cooper Co.*,

> a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of efforts and time by the parties and the courts.  Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.   Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

286 F.2d 631, 634 (3d Cir. 1961); *see also Transamerica Occidental Life Insurance Co. v. Aviation Office of America, Inc*., 292 F.3d 384, 389–90 (3d Cir. 2002).  Applying the logical relationship standard, it is readily apparent that the same facts form the basis for the competing claims made by U.S. Eagle and Scott, and that it serves the interests of the parties and judicial economy to resolve the competing claims in one proceeding. Thus, Scott's Counterclaim must be understood to constitute a compulsory counterclaim.

14

Scott's contention that his Counterclaim against U.S. Eagle is permissive rests on his unsupported assertion that joinder of Dawn, Philip and Jim to the Counterclaim is necessary, and that if this Counterclaim had been filed in the Florida District Court, that court would have lacked personal jurisdiction over these individuals because they lack sufficient minimum contacts with Florida.   In short, because Scott concludes that Rule 13(a)(1)(B) cannot be satisfied, he further concludes that his Counterclaim constitutes a permissive counterclaim under Rule 13(b).

The flaw in this analysis is that it presumes, without any factual or legal demonstration, that Dawn, Philip and Jim are required to be joined.   As stated earlier, Rule 13(h) directs that joinder of additional parties is governed by Rules 19 and 20.   Logically, Rule 20 does not apply to the matter at hand because it merely addresses permissive joinder.   *See* Fed. R. Civ. P. 20.   On the other hand, Rule 19, addressing required joinder of parties, provides in pertinent part:

> (a)    Persons Required to Be Joined if Feasible.
>    (1) Required Party.   A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>       (A)    <u>In that person's absence, the court cannot accord complete relief among existing parties</u>

Fed. R. Civ. P. 19(a)(emphasis added).

As is apparent from the quoted language, Rule 19 requires compulsory joinder when a party is necessary to the existing litigation.   *See* Fed. R. Civ. P. 19(a).[4]   "In contrast to Rule 20, under which proper parties <u>may</u> be joined in certain circumstances because of a common interest in a question of law or fact, even though they have no substantive right to compel joinder, Rule 19

---

[4] Rule 19(a)(1)(B) is inapplicable as it requires joinder if  that person claims and interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

refers only to those parties who <u>should</u> be joined because they are either necessary or indispensable parties to the litigation." *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980)(emphasis added); *see also* Fed. R. Civ. P. 20.

While joinder of Dawn, Philip, and Jim might be convenient for Scott and they perhaps could be permissively joined under Rule 20, their joinder is not necessary to afford complete relief between U.S. Eagle and Scott, the existing parties addressed under Rule 19(a)(1)(A). To construe Rule 19(a)(1)(A) so generously as to require the joinder of Dawn, Philip and Jim obliterates the distinction between required joinder under Rule 19 and permissive joinder under Rule 20. *See Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)("Completeness is determined on the basis of these persons who are already parties, and not as between a party and the absent party whose joinder is sought."). Adding Dawn, Philip and Jim as parties is not necessary for a determination that U.S. Eagle properly terminated Scott as both an employee and a member of the Board. Moreover, if Scott prevails on his Counterclaim, he can obtain reinstatement as well as monetary damages. No additional parties are required to be added to the Counterclaim for Scott to obtain this redress from U.S. Eagle. In other words, neither Dawn, Philip nor Jim are required to be joined in Scott's Counterclaim simply because they were participants in the events giving rise to this litigation. Consequently, the holding in *Ritz Hotel, Ltd. v. Shen*, No. 05-4730, 2009 WL 650382 (E.D. Pa March 9, 2009), that permissive counterclaims filed after a § 1404 transfer are governed by the choice of law principles of the transferee forum, does not apply and does not dictate that New Jersey choice of law rules apply. *See Van Dusen*, 376 U.S. at 639.

Equally important, as U.S. Eagle points out, had Scott's Counterclaim been filed in the Florida District Court it also would have been a compulsory counterclaim to which joinder of Dawn, Philip, and Jim would have been unnecessary. Because joinder of these individuals was

16

not and is not necessary, the claim that the Florida District could not have exercised personal

jurisdiction over them lacks applicability and does not provide a basis for characterizing the

counterclaim as permissive.   Consequently, this court, as the transferee court must look to the

holding in *Van Dusen*, and apply Florida law to the choice of law issue before it.


   b.      **Florida Choice of Law Analysis**

   The internal affairs doctrine is well recognized as providing that the state of incorporation

governs the regulation of a corporation's internal affairs.   *In re Direct Response Media, Inc.* 466

B.R. 626, 646 (Bankr. D. Del. 2012).   In Florida, the internal affairs doctrine is codified in Fla.

Stat. § 607.1505(3)(providing that Florida is not authorized "to regulate the organization or

internal affairs of a foreign corporation authorized to transact business in this state.");   *see also,*

*Mukamal v. Bakes*, 378 Fed. Appx. 890, 897 (2010)(citing Fla. Stat. § 607.1505(3)).   The

concept of corporate internal affairs encompasses a broad array of governance issues.   The

Supreme Court has explained that the internal affairs of a corporation include the fiduciary duties

owed to a corporation by its officers and directors and "matters peculiar to the relationships

among or between the corporation and its current officers, directors, and shareholders. . . ."

*Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

   The Eleventh Circuit's decision in *Mukamal* well illustrates the application of the internal

affairs doctrine by a Florida Court.   *Mukamal*, 378 Fed. Appx. at 890.   In that matter, the

liquidating trustee under a confirmed plan commenced suit against various parties including the

debtors' former officers and directors alleging various breaches of fiduciary duty and the aiding

and abetting of those breaches.   *Id.* at 892.   The debtors were both incorporated in Delaware but

the acts on which the suit was based largely occurred in Florida.   *Id.*   On a motion by the

defendants to dismiss the breach of fiduciary duty claims the district court granted the relief, applying Delaware rather than Florida law to the claims. *Id.* at 896. The Eleventh Circuit affirmed the district court's determination that Delaware law must be applied to claims directed at the internal affairs of a Delaware corporation. *Id.* at 890.

In the matter at hand, the internal affairs of U.S. Eagle are directly at issue because the claims between it and Scott concern termination of Scott's employment as an officer and director as well as his allegation that he suffered minority shareholder oppression. Since U.S. Eagle was incorporated in Delaware and the present dispute concerns its management and the conduct of its officers and directors, Delaware law provides the substantive law for resolution of the matters before this court.

### III.    Claims for Minority Shareholder Oppression and Breach of Fiduciary Duty

#### a.    <u>Minority Shareholder Oppression</u>

U.S. Eagle's request to dismiss Scott's counterclaim rests on its contention that Delaware law does not recognize a claim for minority shareholder oppression, citing *Nixon v. Blackwell*, 626 A.2d 1366 (Del. 1993) and *Nightingale & Assocs., LLC v. Hopkins*, No. 07-4239, 2008 WL 4848765 (D.N.J. Nov. 5, 2008).

A close reading of *Nixon* reveals that the court did not precisely address such a cause of action. *See Nixon*, 626 A.2d 1366 (Del 1993). In *Nixon*, the minority shareholders sued the directors/majority shareholders for breach of fiduciary duty for policies favoring Class A employee stockholders over Class B nonemployee stockholders. *Nixon*, 626 A.2d at 1370. The Supreme Court of Delaware agreed with the lower court that the entire fairness test should be

applied to determine the appropriateness of the conduct of the directors/majority shareholders.

*Id*. at 1375–76.  However, it disagreed with the manner in which the lower court applied that test, and further disagreed that fairness required equality of treatment, stating that "it is well established in our jurisprudence that stockholders need not always be treated equally for all purposes." *Id*. at 1376.  The Court then concluded that the record before it established that the Class B nonemployee shareholders had received fair treatment.  *Id.* at 1379.  Thereafter, in dicta, commenting on whether there should be "any special judicially-created rules to 'protect' minority shareholders of closely-held [] corporations" the court stated, "It would run counter to the spirit of the doctrine of independent legal significance, and would be inappropriate judicial legislation for this Court to fashion a special judicially-created rule for minority investors when the entity does not fall within those statutes, or when there are no negotiated special provisions in the certificate of incorporation, by-laws, or stockholder agreements."  *Id*. 1380–81.

Read as a whole, the *Nixon* holding and its dicta evidence that the Delaware Supreme Court would not recognize a judicially-created cause of action where there are no special provisions in the certificate of incorporation, by-laws, or shareholder agreements.  *See Nightingale*, 2008 WL 4848765 at *6 (The Delaware Supreme Court has refrained from applying remedies for alleged oppression, finding that a person buying into a minority position can bargain for certain protections.").  Here, Scott does not claim that U.S. Eagle is a close corporation as defined by Delaware law and does not allege that there are any provisions in any corporate documents that provide special rights.  As a result, this court does not find that Scott's claim for minority shareholder oppression states a cause of action cognizable under Delaware law.

To the extent that Scott's Counterclaim might be understood to assert a claim simply for improper termination he has also failed to state a claim. Scott's Counterclaim does not indicate that he had an employment contract with U.S. Eagle. In the absence of evidence of a written agreement, it appears to the court that under Delaware law Scott's employment was at-will. *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 102 (Del. 1992); *Avallone v. Wilmington Medical Center, Inc.*, 553 F. Supp. 931, 937 (D. Del. 1982). As an at-will employee Scott could be terminated at either his decision or that of the Board. *See Havey v. Lamb*, 312 A. 2d 330, 332 (Del. 1973). ("A hiring for an indeterminate period is a hiring at will and, consequently, is terminable at the will of either party with or without cause.").

It is also important that Scott's Counterclaim and Third Party Complaint focus solely on his dismissal as an employee and termination as a member of the Board of Directors. Scott even captions his Counterclaim as "Improper Termination Through Minority Shareholder Oppression." There is no allegation that U.S. Eagle or the Third Party Defendants took any steps to reduce or modify his stock interest in U.S. Eagle. In *Riblet Products Corp. v. Nagy*, 683 A.2d 37, 37 (Del. 1996), the Supreme Court of Delaware held that "although majority stockholders have fiduciary duties to minority stockholders qua stockholder, those duties are not implicated when the issue involves the rights of the minority stockholder qua employee under an employment contract." This ruling was a product of a certified question from the Seventh Circuit Court of Appeals. The Specific question as reformulated by the Supreme Court of Delaware was, "Whether majority stockholders of a Delaware corporation may be held liable for violation of a fiduciary duty to a minority stockholder who is an employee of the corporation under an employment contract with respect to issues involving that employment." *Id*. at 39.

20

In *Riblet*, the Chairman, President, CEO and minority shareholder sued the majority

shareholders of Riblet claiming that they breached their fiduciary duty to him by terminating

him. *Id.* at 38.  The court stated that Nagy's rights under his employment contract were separate

from his rights as a stockholder, and further stated that "[t]his is not a case of breach of fiduciary

duty to Nagy <u>qua</u> stockholder." *Id.*  The factual basis stated by Scott for his claim rests solely on

his termination as an officer and director.  No claim is made that his shareholder interests were

otherwise impaired, and there is no claim that his shareholder stake has been modified.  As a

consequence, his claim cannot be viewed under *Riblet*, as stating a claim for minority

shareholder oppression against U.S. Eagle of the Third Party Defendants.


**b.**      <u>**Breach of Fiduciary Duty Claims**</u>

The decision in *Riblet* also acts as a bar to Scott's breach of fiduciary duty claim against

the Third Party Defendants based on his termination as an officer of U.S. Eagle.  *Riblet Products*,

683 A.2d 37, 37.  *Riblet* specifically held that majority stockholders are not liable for a breach of

fiduciary duty "to a minority stockholder who is an employee of the corporation under an

employment contract with respect to issues involving that employment." *Id.* at 39–40.  Scott's

attempt to distinguish the case on the ground that Scott did not have a formal contract and that

the court in *Riblet* noted that the plaintiff had obtained a recovery on his contract is unavailing.

*Riblet* focused on the nature of the relationship (employer/employee) and found that it did not

form a basis for a claim by a stockholder based on breach of fiduciary duty.  *Id.* at 40.  Likewise,

in *Wall Street Systems, Inc. v. Lememce,* the court held that under Delaware law a stockholder of

a closely held corporation who is also an employee cannot recover on a breach of fiduciary duty

claim when the claim is grounded solely in an employment dispute. *Wall Street* Systems, No. 04-

5299, 2005 WL 2143330 at *8 (S.D.N.Y. Sept. 2, 2005).

Equally unsupportable is Scott's claim that the Third Party Defendants breached their fiduciary duty to him by voting to remove him from the Board of Directors. The Delaware General Corporation Law provides for removal of directors with or without cause:

> (k)   Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors, except as follows:
>
> (1)   Unless the certificate of incorporation otherwise provides, in the case of a corporation whose board is classified as provided in subsection(d) of this section, stockholders may effect such removal only for cause; or
>
> (2)   In the case of a corporation having cumulative voting, if less than the entire board is to be removed, no director may be removed without cause if the votes cast against such director's removal would be sufficient to elect such director if then cumulatively voted at an election of the entire board of directors, or, if there be classes of directors, at an election of the class of directors of which such director is part.

8 Del. C. § 141(k).

Here, Scott claims in his Third Party Complaint that Dawn and Jim own the majority of the shares in U.S. Eagle. Scott also alleges in the Third Party Complaint that in 2005, together with Dawn, he voted to remove and reconfigure the Board without cause. The court agrees with the Third Party Defendants that these allegations effectively constitute Scott's acknowledgment that the majority of U.S. Eagle stockholders could act to remove directors with or without cause. Further, such conduct is consistent with the general rule stated in the first paragraph of § 141(k). Additionally, there are no allegations in the Third Party Complaint that support application of either § 141(k)(1) or (2). In fact, the Third Party Complaint specifically alleges that Dawn and Jim entered into a written consent to remove all members of the Board of Directors. Scott's failure to allege conduct that violates the Delaware statute and failure to allege that the U.S.

Eagle certification of incorporation or by-laws limit the authority of stockholders to remove

directors preclude a claim for breach of fiduciary duty based on his removal as a director.

The court also agrees with the Third Party Defendants that to the extent Scott's Third

Party Complaint is based on events that occurred more than three years from the filing date of

the Third Party Complaint, the statute of limitations has run and the claims are time-barred.

By statute, Delaware provides that "no action to recover damages caused by an injury

unaccompanied with force or resulting indirectly from the act of the defendant shall be brought

after the expiration of 3 years from the accruing of such action." 10 Del. Code § 1806. The

cause of action accrues at the moment of the wrongful act even if plaintiff is ignorant of the

wrong. *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999). By analogy, this statute applies to

equitable claims such as breach of fiduciary duty and fraud. *See In re American Intern. Group,*

*Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009)(applying § 1806 to breach of fiduciary duty and fraud);

*In re Tyson Foods, Inc. Consolidated Shareholder Litig.*, 919 A.2d 263, 584 (Del. Ch.

2006)(applying § 1806 to breach of fiduciary duty); *Fike v. Ruger*, 754 A.2d at 260 (applying §

1806 to breach of fiduciary duty); *In re Dean Witter P'ship Litig.*, No. 14816, 1998 WL 442456

at *4 (Del. Ch. 1998)(applying § 1806 to breach of fiduciary duty).


## CONCLUSION

As described above the court concludes that Florida law requires application of Delaware

law to the Counterclaim and Third Party Complaint. Further, under Delaware law, both the

Counterclaim and Third Party Complaint failed to state claims on which relief can be granted.


Dated: December 20, 2012                    ____/S/_____
                                            NOVALYN L. WINFIELD
                                            United States Bankruptcy Judge